# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 5849 | **DATE** | 7/29/2003 |
| **CASE TITLE** | Manufacturers & Traders vs. Hughes | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 9/4/2003 at 9:30 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's amended motion for summary judgment [32-1] is granted in part and denied in part. This case is set for status on September 4, 2003, at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | JUL 3 1 2003 |
| | Notified counsel by telephone. | date docketed |
| X | Docketing to mail notices. | |
| | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |

courtroom deputy's initials

Date/time received in central Clerk's Office | mailing deputy initials

Document Number: 41

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MANUFACTURERS & TRADERS TRUST )
COMPANY, as Assignee, et al.,            )
                                                             )
                    Plaintiffs,            )    Case No. 99 C 5849
          v.                                       )
                                                             )    Judge Joan B. Gottschall
ROY HUGHES, et al.,                    )
                                                             )
                    Defendants.        )

DOCKETED
JUL 3 1 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Manufacturers & Traders Trust Company ("MTT") moved for summary judgment in its favor for its mortgage foreclosure claim against defendants Roy and Lessie Hughes, as well as for the Hughes' counterclaims alleging statutory and common law fraud. The key issue is whether under Illinois law, MTT, who was assigned the mortgage while this foreclosure suit was pending, is subject to counterclaims or affirmative defenses based on the deceptive practices of MTT's predecessor, ContiMortgage Corporation ("ContiMortgage"). As explained below, neither of the Hughes' counterclaims are viable against MTT as ContiMortgage's assignee, so the court grants summary judgment for MTT on the counterclaims. However, because the Hughes have a viable affirmative defense to the mortgage foreclosure, this case must proceed to trial on MTT's foreclosure claim. MTT's motion for summary judgment is therefore granted in part and denied in part.

## Background

Defendants Roy Hughes, 82 years old, and Lessie Hughes, 66 years old, have owned their home, the subject of the present mortgage foreclosure suit, since 1983. Prior to their purchase, Mrs. Hughes had lived in the house as a renter since 1969. On June 23, 1998, the Hughes refinanced their mortgage loan with World Wide Financial Services, Inc. ("World Wide") to create a 15-year $70,000 loan requiring monthly mortgage payments of $807.30 (excluding taxes and insurance) and a balloon payment of $62,670.24 due after 15 years. The World Wide mortgage carried an interest rate of 13.6% per year. That same day, World Wide assigned the Hughes' mortgage to ContiMortgage.

A few months later, a ContiMortgage agent called the Hughes and asked them if they wanted to refinance their existing mortgage. According to Mrs. Hughes' deposition testimony, the agent explained that ContiMortgage could provide them with a loan that would include an escrow for taxes and insurance in their monthly payment while reducing their existing monthly mortgage payment.[1] Based on these representations, the Hughes agreed to meet with a ContiMortgage representative on February 11, 1999. During this meeting, the Hughes signed a Uniform Residential Loan Application that indicated they were seeking to obtain a loan for $88,250 and that the purpose of refinancing the World Wide mortgage was to obtain a "Lower Interest Rate." They also signed all the documents presented to them by the ContiMortgage

---

[1] The Hughes also contend that ContiMortgage represented that by refinancing, they could eliminate the balloon payment from their loan—a payment the Hughes had not even known was part of their existing loan—yet the refinanced mortgage included a balloon payment even higher than required by the previous mortgage. The Hughes offered no evidence relating to this alleged misrepresentation, however, so the court has not considered it. *See* Fed. R. Civ. P. 56(e) (party opposing summary judgment may not simply rest on allegations in their pleadings).

agent in that meeting, thus entering into a 15-year loan agreement with ContiMortgage.
Although the new ContiMortgage Loan carried a lower interest rate of 11.17% per year, the
Hughes were required to make higher monthly mortgage payments of $851.79 (exclusive of
insurance and taxes), with a balloon payment in the amount of $75,090.34 due on March 1,
2014. ContiMortgage also charged the Hughes a $5,295 fee (6% of the loan) at closing, which
was financed into the loan.

Both Mr. and Mrs. Hughes have trouble reading due to their limited education and, for
Mr. Hughes, eyesight problems. They were not able to read the loan documents presented to
them, but relied on the representations made by ContiMortgage when agreeing to the loan. Mrs.
Hughes also testified that despite repeated requests, they were not provided with copies of the
documents they signed. Soon after the loan was originated, the Hughes fell behind on their
payments.

ContiMortgage commenced this foreclosure proceeding against the Hughes on
September 7, 1999. In response, in addition to answering the complaint, the Hughes raised
affirmative defenses and counterclaims against ContiMortgage, claiming that ContiMortgage
violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS
505/1 *et seq.*, and committed common law fraud when it originated their loan. On May 11,
2001, ContiMortgage's counsel orally moved to substitute MTT for ContiMortgage as the party
plaintiff because the loan had been sold to MTT during the pendency of the foreclosure
litigation. The Hughes filed their Second Amended Affirmative Defenses and Counterclaims on
September 24, 2002, alleging in both the first affirmative defense and first counterclaim that
ContiMortgage's practices violated the ICFA, and alleging in both the second affirmative

defense and second counterclaim that ContiMortgage committed common law fraud. MTT filed an answer to these claims on September 27, 2002. Thereafter, MTT filed the instant motion seeking summary judgment for both the foreclosure claim and the Hughes' counterclaims.

## Analysis

Summary judgment is only appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party, MTT in this case, has the initial burden of proving that no genuine issue of material fact exists. *Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Once the moving party shows that there is no genuine issue of material fact, the burden shifts to the nonmoving party to designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The court must examine the admissible evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## The Hughes' Counterclaims

Neither of the counterclaims are viable against MTT, as ContiMortgage's assignee, because they are based solely on ContiMortgage's misconduct, not MTT's. In the first counterclaim, the Hughes contend that ContiMortgage violated the ICFA by making misrepresentations about the costs and benefits of refinancing their mortgage. Specifically, the Hughes allege that the representations made by ContiMortgage during the telephone solicitation and in the February 11, 1999 meeting differed from the actual terms of the mortgage as set forth

4

in the loan documents. To prevail in a counterclaim under section 2 of the ICFA, the Hughes must prove: "(1) a deceptive act or practice by the [plaintiff]; (2) the [plaintiff's] intent that the [defendants] rely on the deception; and (3) that the deception occurred during a course of conduct involving trade or commerce." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). Liability under the ICFA is limited to those persons that directly participated in the fraudulent or deceitful conduct, however. *See Jackson v. S. Holland Dodge, Inc.*, 755 N.E.2d 462, 469-71 (Ill. 2001); *Zeckman v. Direct Am. Marketers, Inc.*, 695 N.E.2d 853, 859 (Ill. 1998). As the Illinois Supreme Court has held, an assignee cannot be liable under the ICFA unless the assignee's participation in the deceptive lending practice was "active and direct," or, for ICFA claims based on the assignor's violations of the federal Truth in Lending Act, 15 U.S.C. § 1641(a) ("TILA"), unless the assigned documents contained TILA violations that were "apparent on the face of the disclosure statement[.]" *Jackson*, 755 N.E.2d at 469-470.

Neither of those circumstances are present here. The Hughes do not point to any fraudulent statements in the actual loan documents, but rather proceed under a "fraud in the inducement" theory based on ContiMortgage's oral representations. Further, their theory involves only ContiMortgage's conduct, not any active, direct conduct by MTT. Under the facts presented, "Illinois law is absolutely clear that . . . assignees of the allegedly fraudulent mortgage cannot be held liable under ICFA for [the assignor's] alleged fraud."[2] *Dowdy v. First Metro. Mortgage Co.*, No. 01 C 7211, 2002 WL 745851, at *3 (N.D. Ill. Jan. 29, 2002); *see also*

---

[2]Unfortunately for the Hughes, their argument that MTT purchased the loan after ContiMortgage had already commenced the instant foreclosure suit and was therefore on notice of the Hughes' ICFA counterclaim against ContiMortgage is irrelevant because as an assignee, MTT cannot be liable under the ICFA for its predecessor's fraud.

5

*Zeckman*, 695 N.E.2d at 859 (ICFA does not provide a cause of action against those who knowingly receive the benefits of another's fraud). Because there be no affirmative ICFA liability against MTT on the basis that it purchased a loan that was fraudulently originated by ContiMortgage, the court grants summary judgment in favor of MTT for the Hughes' first counterclaim.

In their second counterclaim, the Hughes assert a common law fraud claim against MTT, again based on ContiMortgage's conduct. In order to sustain a claim for common law fraud under Illinois law, the defendants (as counterplaintiffs) must provide evidence to support each of the following elements: (1) the plaintiff made a false statement of material fact; (2) which the plaintiff knew or believed to be false; (3) with the intent to induce defendants to act; (4) the defendants justifiably relied on the statement; and (5) the defendants suffered damage from such reliance. *Connick*, 675 N.E.2d at 591. Additionally, to sustain a claim for common law fraud in Illinois, the person asserting the claim must show that the other party actually committed the fraud. *Jarvis v. S. Oak Dodge, Inc.*, 773 N.E.2d 641, 648-49 (Ill. 2002). Thus, the fatal flaw in the Hughes' fraud counterclaim is that it is based on the same deceptive acts that served as the basis for the Hughes' ICFA counterclaim—ContiMortgage's, not MTT's, misconduct.

The Hughes argue for the viability of their fraud counterclaim citing to *Inland Real Estate Corporation v. Oak Park Trust & Savings Bank*, in which the Illinois Appellate Court stated "[t]he assignee of a mortgage takes it subject to the same equities it was subject to in the hands of the assignor. . . . It is therefore the duty of the assignee to inquire of the mortgagor if there is any reason why it should not be paid." 469 N.E.2d 204, 209 (Ill. App. Ct. 1984). But *Inland* involved an affirmative defense asserted against the assignee of a mortgage. *Id.* Just

6

because a party has a right to assert a fraudulent inducement defense to a claim against him does not mean he also has the right to assert a fraud claim (or counterclaim). *See Cmty. Fed. Sav. v. Reynolds*, No. 87 C 4948, 1989 WL 99548, at *4 (N.D. Ill. Aug. 18,1989) (explaining the difference between an affirmative defense and a claim seeking to impose affirmative liability). The Hughes point to no Illinois cases holding that an assignee of a mortgage can be *affirmatively liable* for common law fraud for the deceptive acts of the assignor. Summary judgment is therefore granted in favor of MTT for the common law fraud counterclaim.

## MTT's Foreclosure Claim

MTT also seeks summary judgment on its foreclosure claim, arguing that the Hughes' two affirmative defenses have no merit. MTT's argument is misplaced, however, at least with respect to the affirmative defense asserting common law fraud. The fraudulent acts of the assignor ContiMortgage, although not a proper basis to impose affirmative liability against the assignee for the reasons set forth above, can nevertheless serve as the basis for an affirmative defense against MTT's foreclosure claim. *Id.* at *4 (citing *Inland*, 469 N.E.2d at 209). "It is well established that the assignee of a trust deed in the nature of a mortgage takes it subject to the same defenses that existed between the original parties to the instrument." *Inland*, 469 N.E.2d at 209. Further, "an action to foreclose a real estate mortgage is a proceeding in equity and, as such, traditional equitable defenses [such as fraud] may be raised by a mortgagor." *Klehm v. Grecian Chalet, Ltd.*, 518 N.E.2d 187, 190 (Ill. App. Ct. 1987); *Farm Credit Bank of St. Louis v. Isringhausen*, 569 N.E.2d 235, 237 (Ill. App. Ct. 1991) (fraud is a valid defense to enforcement of a note); Black's Law Dictionary 430 (7th ed. 1999) (definitions of both

7

affirmative defense and equitable defense include fraud). Because the Hughes could have raised fraud as a defense to foreclosure by ContiMortgage, the originator of the loan, they are free to raise it as a defense against foreclosure by ContiMortgage's assignee, MTT.

Not only is fraud based on ContiMortgage's conduct a viable affirmative defense against foreclosure by MTT, but material questions of fact relating to this affirmative defense preclude summary judgment. The Hughes have presented evidence that ContiMortgage told Mrs. Hughes that by refinancing the Hughes could get a loan that would include an escrow for taxes and insurance yet reduce their existing monthly mortgage payment. In fact, after refinancing, the Hughes' monthly payment was higher, and did not include escrow for taxes or insurance. MTT argues that the Hughes could not have reasonably relied on the oral misrepresentations because the TILA representations in the loan documents accurately disclosed the terms. It is true that "a defense of fraud is ordinarily unavailable to avoid the effect of a written agreement if the complaining party could have discovered the fraud by reading the instrument and was afforded a full opportunity to do so." *Seward v. B.O.C. Div. of Gen. Motors Corp.*, 805 F. Supp. 623, 630 (N.D. Ill. 1992); *Am. Sav. Assoc. v. Conrath*, 462 N.E.2d 849, 853-54 (Ill. App. Ct. 1984), *superceded by statute on other grounds as stated in Margaretten & Co., Inc. v. Martinez*, 550 N.E.2d 8, 10 (Ill. App. Ct. 1990). But there is an exception in cases where there is "a manifest inequality between the respective parties[.]" *Seward*, 805 F. Supp. at 630; *Am. Sav. Assoc.*, 462 N.E.2d at 854. Here, the Hughes have presented evidence of inequality between the parties: neither of them was capable of reading the documents (nor were copies of the documents ever provided to them). After hearing the evidence, a jury must decide whether a defense of fraud

8

based on misrepresentations outside of the loan documents is available due to an inequality between the parties.[3]

Although trial is warranted based on the common law fraud affirmative defense, the Hughes' affirmative defense based on the ICFA is not actionable. Section 2D of the ICFA bars assignees from being in the position of a holder in due course under certain circumstances, making their rights subject to "any defense or right of action" the consumer could have raised against the assignor. 815 ILCS 505/2D; *People ex. rel. Scott v. Regency Indus., Inc.*, 422 N.E.2d 259, 262 (Ill. App. Ct. 1981). Section 2D, however, does not apply to the mortgage here. By its plain language, section 2D applies to the assignment of a retail installment sales contract for merchandise. 815 ILCS 505/2D. But for some reason, "merchandise" as defined under the ICFA does not include real estate situated in the Illinois. *Id.* at 505/1(b).[4] Moreover, although an assignee of a mortgage is subject to any traditional equitable defenses the defendant could raise against the assignor, *Klehm*, 518 N.E.2d at 190, traditional equitable defenses are defenses such as failure of consideration, fraud, duress or mistake, not a violation of section 2 of the ICFA. 27A *Illinois Law & Practice*, Mortgages § 198 (2003); Black's Law Dictionary 430 (definitions of affirmative defense and equitable defense). Given the inapplicability of section 2D of the ICFA, and given that the Hughes cannot bring direct ICFA claims against MTT as

---

[3]MTT points to Mr. Hughes' testimony that no one from ContiMortgage made any false statements to him. That testimony is taken out of context, however, and thus is not dispositive as to whether ContiMortgage committed fraud: Mr. Hughes also testified that all communications with ContiMortgage went through his wife and that he remembered the representative from ContiMortgage coming to his home and making promises that they could provide a loan with better terms than their existing mortgage.

[4]"The term 'merchandise' includes any objects, wares, goods, commodities, intangibles, real estate situated *outside* the State of Illinois, or services." 815 ILCS 505/1(b) (emphasis added).

9

assignees, the court finds no legal basis for the Hughes' ICFA affirmative defense. *See Bank of New York v. Heath*, No. 98 CH 8721, 2001 WL 1771825, at *2 (Ill. Cir. Ct. Oct. 26, 2001) (dismissing ICFA counterclaim and affirmative defense against assignee, finding that allowing them to proceed would create rights that did not previously exist).

**Conclusion**

MTT's motion for summary judgment is granted with respect to the Hughes' counterclaims, but is denied with respect to MTT's foreclosure claim because material issues of fact exist relating to the Hughes' affirmative defense based on fraud.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: July 29, 2003